UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JUNIOR HASTINGS MARK
GHIRAWOO,

        Petitioner,

    v.                                                                                    24-CV-217 (JLS)

JOSEPH E. FREDEN, Deputy Field
Office Director, Buffalo Federal
Detention Facility,

        Respondent.
_____



## DECISION AND ORDER

    Petitioner Junior Hastings Mark Ghirawoo, a native and citizen of St. Lucia, petitions this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. For the following reasons, the relief requested is DENIED and the petition is DISMISSED.

## BACKGROUND

    Petitioner has been in Department of Homeland Security ("DHS") custody since April 26, 2023. Dkt. 1 ¶ 3; Dkt. 6-1 ¶ 13. He is detained pending completion of removal proceedings that began after he was convicted of multiple counts of robbery in April 2018. See Dkt. 6-1 ¶ 6; Dkt. 6-2 at 1-3. Petitioner is housed at the Buffalo Federal Detention Facility. Dkt. 1 ¶ 3.

I.   OVERVIEW OF REMOVAL PROCEEDINGS

Ghirawoo first entered the United States on August 7, 2003. Dkt. 6-1 ¶ 5; Dkt. 6-2 at 1. He was admitted as a nonimmigrant visitor authorized to remain in the United States until February 6, 2004. *Id.* On April 3, 2018, Petitioner was convicted of multiple counts of robbery in violation of the New York State Penal Law. Dkt. 6-1 ¶ 6; Dkt. 6-2 at 7. He was sentenced to an aggregate maximum term of incarceration of seven years, with an earliest possible release date of April 24, 2023. *Id.*[1]

On November 9, 2022—while Petitioner was in New York State Department of Corrections and Community Supervision ("DOCCS") custody—DHS issued an Immigration Detainer requiring that DHS be notified at least 48 hours prior to Petitioner's release from DOCCS custody. Dkt. 6-1 ¶ 8. DHS then issued a Notice to Appear on December 19, 2022. Dkt. 6-1 ¶ 9; Dkt. 6-2 at 1. DHS alleged that Petitioner was subject to removal because he (1) remained in the country beyond the authorized timeframe; and (2) was convicted of an aggravated felony theft offense and a felony crime of violence. Dkt. 6-1 ¶ 9; Dkt. 6-2 at 1-3. Petitioner was

---

[1] On April 17, 2018, United States Immigration and Customs Enforcement ("ICE") issued a Notice of Rights and Request for Disposition to Petitioner. Dkt. 6-1 ¶ 7; Dkt. 6-2 at 12. Petitioner requested a hearing before the Immigration Court. *Id.* He also admitted that he was in the Untied States illegally, believed he would face no harm in returning to his country, and wished to return to his country as soon as arrangements could be made. *Id.*

ordered to appear before an Immigration Judge to show why he should not be removed from the United States. Dkt. 6-2 at 1.[2]

On April 24, 2023, following his release from DOCCS custody, Petitioner was arrested and detained in ICE custody. Dkt. 6-1 ¶ 14; Dkt. 6-2 at 22. Upon Petitioner's arrest, DHS issued a Notice of Custody Determination providing that Petitioner was to be detained pending adjudication of the removal proceedings against him. Dkt. 6-1 ¶ 14; Dkt. 6-2 at 13. Petitioner acknowledged receipt of the Notice and requested that an Immigration Judge review the custody determination. *See id.*

On July 21, 2023, following a hearing, United States Immigration Judge Eric Schultz denied all of Petitioner's applications for relief and ordered him removed to St. Lucia. Dkt. 6-1 ¶ 18; Dkt. 6-2 at 14-17.[3] The removal order became administratively final on August 21, 2023, upon expiration of Petitioner's time to file an appeal with the Board of Immigration Appeals ("BIA"). Dkt. 6-1 ¶ 19; Dkt. 6-2 at 23. *See* 8 C.F.R. § 2141.1(c) ("An order of removal made by the immigration judge at the conclusion of proceedings . . . shall become final . . . [u]pon expiration of the time allotted for an appeal if the respondent does not file an appeal within that

---

[2] The hearing was originally scheduled for January 25, 2023. *See* Dkt. 6-1 ¶ 10; Dkt. 6-2 at 1. It was twice rescheduled to afford Petitioner time to find an attorney. Dkt. 6-1 ¶¶ 10-11. On March 22, 2023, Petitioner appeared without an attorney and admitted the charges of removal against him. *Id.* ¶ 12. The matter was rescheduled for a hearing on his application for relief from removal. *Id.*

[3] The hearing was twice rescheduled to allow Petitioner time to locate documents and hire an attorney. *See* Dkt. 6-1 ¶¶ 15-16. Petitioner eventually indicated that he intended to proceed *pro se. See id.* ¶ 17.

3

time"). DHS then issued a Warrant of Removal/Deportation as to Petitioner. Dkt. 6-1 ¶ 21; Dkt. 6-2 at 18.

## II.  EFFORTS TO REMOVE PETITIONER

DHS then began taking steps to effectuate Petitioner's removal from the United States. Specifically, on August 31, 2023, ICE sent a "presentation packet" to the Consulate General of St. Lucia requesting travel documents for Petitioner. Dkt. 6-1 ¶ 22; Dkt. 6-2 at 19-20. ICE officials followed up with ICE's removal unit on September 22, 2023, to check on the status of the travel documents. Dkt. 6-1 ¶ 24. The removal unit, however, advised on October 24, 2023, that there was no update from the Consulate as to the status of the travel documents. *Id.* ¶ 25. ICE also contacted the Department of State on November 23, 2023, for assistance with obtaining travel documents from St. Lucia. *Id.* ¶ 27.[4]

In addition, on numerous occasions between November 2023 and February 2024, ICE communicated with—or attempted to communicate with—the St. Lucia Consulate regarding travel documents for Petitioner. *See* Dkt. 6-1 ¶ 26 (On November 2, 2023, the Consulate advised it was waiting for a response from the St. Lucia government prior to issuing a travel document); ¶ 29 (On December 28, 2023 and January 10, 2024, ICE attempted to reach the St. Lucia Consulate by phone); ¶ 30 (On January 10, 2024, ICE requested an update on the status of the travel

---

[4] ICE also issued a Decision to Continue Detention on December 21, 2023, explaining that Petitioner will remain in custody pending removal because he failed to demonstrate that, if released, he would not pose a danger to the community or risk of flight. *See* Dkt. 6-1 ¶ 28; Dkt. 6-2 at 22-24.

4

document from the Consulate); ¶ 31 (On February 15, 2024, another request to the consulate was made to the Consulate regarding Petitioner's travel documents).

### III. THE INSTANT PETITION

On March 13, 2024, Petitioner filed a Petition with this Court seeking a writ of habeas corpus. Dkt. 1. He argues that his "prolonged" detention in DHS custody violates his Fifth Amendment due process rights. *See id.* ¶¶ 29-30. According to Petitioner, his detention "poses actual and substantial hardships and irreparable injuries," and he has "no adequate remedy at law other than the instant petition for a writ of habeas corpus." *See id.* ¶¶ 31-32. He seeks an order requiring Respondent to "immediately release" him from custody "with reasonable terms of supervised release." *See id.* at 6 (prayer for relief).

Respondent filed an Answer and Return, arguing that "Petitioner has not shown good cause to believe [Petitioner's] removal is not significantly likely to occur within the reasonably foreseeable future, and, in any event, the Government can rebut such a showing." *See* Dkt. 6 at 1. Petitioner replied. Dkt. 12.

### IV. ADDITIONAL EFFORTS TO REMOVE PETITIONER

After Petitioner filed the Petition, DHS continued its efforts to effectuate removal. This included additional communications with the St. Lucia Consulate concerning travel documents for Petitioner. *See* Dkt. 6-1 ¶ 32 (on March 19, 2024, a phone call was made to the St. Lucia Consulate in New York City); ¶ 33 (on April 18, 2024, an e-mail was sent to the Consulate requesting an update on Petitioner's

5

travel documents); ¶ 34 (On April 24, 2024, the Consulate was again contacted regarding Petitioner's travel documents); ¶ 35 (On May 3, 2024, a meeting was held with St. Lucia Ambassador Darius Clark, who stated that they are working on the request).

On July 29, 2024, Petitioner filed a letter stating that he does not believe his "country will grant travel documents in the near future" due to his "medical condition" and "age." Dkt. 13. Petitioner also requested appointment of counsel. *Id.* On August 6, 2024, Respondent advised that ICE received a list of recipients for travel documents from St Lucia, and Petitioner is named on that list. *See* Dkt. 15, 16. No specific date, however, was provided as to when ICE would receive a travel document for Petitioner. *See* Dkt. 16.

Respondent then informed the Court that, on August 19, 2024, an ICE representative met with the Consulate General of St. Lucia, who indicated that a travel document will be issued for Petitioner. *See* Dkt. 20. Respondent further advised that "ICE has not been advised that Petitioner's age or medical condition present any obstacle to his removal or the issuance of travel documents by St. Lucia." *Id.*

## DISCUSSION

Petitioner's detention under Section 1231 comports with the Fifth Amendment. As explained more fully below, Petitioner fails to establish good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future. He is not, therefore, entitled to *habeas* relief.

6

## I. JURISDICTION

Habeas corpus review is available to persons who are "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Circuit courts have jurisdiction, to the exclusion of district courts, over challenges to the legality of final orders of deportation, exclusion, and removal. *See Gittens v. Menifee*, 428 F.3d 382, 384 (2d Cir. 2005) ("[The REAL ID Act, 119 Stat. 231, § 106(a) (May 11, 2005)] eliminates habeas jurisdiction over final orders of deportation, exclusion, and removal, providing instead for petitions of review . . . which circuit courts alone can consider."). District courts, however, can review claims by aliens challenging the constitutionality of their pre-removal detention. *See Demore v. Kim*, 538 U.S. 510, 516-17 (2003).

## II. STATUTORY BASIS FOR DETENTION

The parties agree that Petitioner is detained under 8 U.S.C. § 1231. *See* Dkt. 1 ¶ 7; Dkt. 6-3 at 4-5. This provision governs the detention of aliens *during and after the removal period*—namely, those who, like Petitioner, are subject to final orders of removal. This period is derived from the statute, which provides DHS 90 days to effectuate a removal from the United States following the entry of a final order of deportation or removal. *See* § 1231(a)(1)(A).

Section 1231(a)(1)(B) provides that the removal period begins at the latest of the following events:

>   (i)   The date the order of removal becomes administratively final.
>   (ii)  If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
>   (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

*Id.* § 1231(a)(1)(B).[5]

During the 90-day removal period, detention is mandatory. *Id.* § 1231(a)(2). Once this removal period is over, however, detention is discretionary: an alien may be detained beyond the removal period if, among other things, he is removable under certain provisions of 8 U.S.C. § 1227. *See id.* § 1231(a)(6).

### III. THE DUE PROCESS CLAUSE

In *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001), the "Supreme Court was faced with the challenge of reconciling" the statute's "apparent authorization of indefinite executive detention with the Due Process Clause of the Fifth Amendment." *Wang v. Ashcroft*, 320 F.3d 130, 146 (2d Cir. 2003) (citing *Zadvydas*, 533 U.S. at 701). The Supreme Court held that six months of detention is "presumptively reasonable." *Zadvydas v. Davis*, 533 U.S. at 701. And after six months, a detained noncitizen may seek release by "provid[ing] good reason to

---

[5] Here, Section 1231 governs Petitioner's detention because (1) he is subject to a final order of removal, and (2) has not obtained a stay of removal from the Second Circuit. *See id.*

believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* at 701. The government then "must respond with evidence sufficient to rebut that showing." *Id.*

## IV. ANALYSIS

Petitioner's detention under Section 1231 does not violate his due process rights. Indeed, Petitioner cannot demonstrate "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *See Zadvydas*, 533 U.S. at 701. Petitioner's order of removal became administratively final on August 21, 2023, upon expiration of his time to appeal his removal order to BIA. *See* Dkt. 6-1 ¶ 19; 8 C.F.R. § 2141.1(c). The ninety-day removal period under the statute expired on November 19, 2023. And the six-month "presumptively reasonable" period under *Zadvydas* expired on February 21, 2024. Petitioner has been detained—under Section 1231—for approximately 12 months.

Within days of the removal order becoming final in August 2023, DHS began the process of obtaining travel documents for Petitioner's removal to St. Lucia. Between August 2023 and November 2023, DHS (1) sent a presentation packet to the Consulate General of St. Lucia requesting travel documents; (2) followed up with the ICE removal unit to check on the status of the issue; and (3) contacted the Department of State for assistance. *See* Dkt. 6-1 ¶¶ 22, 24, 27; Dkt. 6-2 at 19-20.

Further, on numerous occasions between November 2023 and August 2024, DHS communicated with—or attempted to communicate with—the St. Lucia Consulate concerning travel documents for Petitioner. *See, e.g.*, Dkt. 6-1 ¶¶ 26, 29,

9

30, 31, 32, 33, 34, 35. And as of August 2024, DHS was waiting to receive travel documents from the St. Lucia government. *See* Dkt. 20. According to Respondent, (1) the Consulate General of St. Lucia advised DHS that a travel document will be issued for Petitioner; (2) Petitioner is on a list of future recipients; and (3) DHS has not been advised that Petitioner's age or medical condition presents any obstacle to his removal or the issuance of travel documents by St. Lucia. *See id.*

It is true that Petitioner has been detained under Section 1231 beyond the six-month *Zadvydas* period. But during that time, ICE reviewed his detention on at least one occasion subsequent to his initial custody determination, and concluded that Petitioner was a flight risk and a threat to public safety. *See* Dkt. 6-1 ¶ 14; Dkt. 6-2 at 13 (Notice of Custody Determination); Dkt. 6-1 ¶ 28; Dkt. 6-2 at 22-24 (Decision to Continue Detention). *See also Abimbola v. Ridge*, 181 F. App'x 97, 99 (2d Cir. 2006) ("Although [Petitioner] has been detained well beyond the six-month period, the INS has reviewed [his] detention on at least two occasions, providing him with notice of at least the most recent reviews, and determined that [he] was a flight risk and that his removal could be effectuated as soon as judicial review of his removal was complete"). On this record, Petitioner's detention under Section 1231 is lawful.[6]

---

[6] Because Petitioner did not demonstrate "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the Court need not determine whether the Government rebutted such a showing. *See Zadvydas*, 533 U.S. at 701. In any event, on this record, the Court concludes that the Government has done so.

## CONCLUSION

For the foregoing reasons, the relief requested is DENIED. The Petition is DISMISSED without prejudice to the filing of any new Petition in the future based on new and different facts and consistent with the analysis above. Petitioner's [13] motion to appoint counsel is DENIED as moot. The Clerk of Court shall close this case.

SO ORDERED.

Dated:   August 29, 2024
         Buffalo, New York

_____
JOHN L. SINATRA, JR.
UNITED STATES DISTRICT JUDGE